[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a dissolution action filed by the plaintiff, Gary J. Pierro, against the defendant, Leighanne Pierro, whose maiden name was Leighanne Hennessey. The court finds that the parties were married in Vernon, Conn., on November 27, 1982; that the plaintiff had lived in Connecticut for more than twelve months before filing this action; that three children were born issue of the marriage, viz. Ryan P. Pierro, born March 27, 1983; Ashley H. Pierro, born August 8, 1986; and Joseph R. Pierro, born June 28, 1990; that no other children were born to the defendant during the marriage; that neither party has received or is receiving financial aid from any governmental entity; and that the marriage has broken down irretrievably.
The court dissolves the marriage.
The court also finds the following facts. Early on in the marriage the parties began to drink liquor excessively and to dabble in the consumption of illicit drugs, principally cocaine. Eventually, this usage escalated to the point where both parties periodically ingested cocaine and frequently consumed alcohol. In the beginning, the plaintiff was the source of the narcotics the parties shared, and later on the defendant assumed that role. Both parties were arrested at different times for driving while under the influence of intoxicating liquor, and both completed the pretrial alcohol education program provided for in General Statutes § 54-56g. During 1990 the plaintiff recognized that he and his wife were alcoholics and that substance abuse was damaging their lives. He ceased using illicit drugs and curtailed consumption of liquor. Unfortunately, the defendant failed to follow the plaintiff's lead away from such abuse.
In 1984, upon the death of her father, the defendant's drinking habits increased from occasional binging to more continuous imbibing. When the plaintiff reduced his consumption of liquor, he attempted to persuade the defendant to obtain professional help to diminish her reliance on liquor. The defendant has refused to seek such help. The defendant's level of CT Page 12523 drinking became the source of frequent arguments between the parties, and the defendant resorted to hiding liquor caches in the house to conceal the extent of her use from the plaintiff.
Between 1990 and 1992, the defendant's drinking began to affect her employment. The defendant has a bachelor of science degree in marketing. She was then employed as political action, coordinator by the Travelers Insurance Company earning around $28,000 per year.
Also, the plaintiff would return home to discover the defendant, who had the three children in her charge, intoxicated and incapable of caring for the children. The plaintiff would occasionally remove himself and the children from the home, and the defendant's company, and stay overnight at his parent's home to avoid contact with the defendant while she was in a drunken state.
In the fall of 1990, when the youngest child was an infant, the defendant had to call a neighbor for assistance. The neighbor went to the defendant's house and found the defendant to be very drunk. The plaintiff was away from home on a business trip at the time. The defendant mother was present but had passed out. The neighbor brought the defendant and the three children to her own home. While at the neighbor's house, the defendant proceeded to consume all the liquor in that home. The neighbor cared for the three children for three days. When the neighbor went to the defendant's home to obtain diapers and baby formula, she located no such provision in that house. Other neighbors and the plaintiff's sister also testified and related similar instances where care for the children had to be assumed by them because of the defendant's inebriation.
On Mother's Day 1992, the defendant took the children to visit her mother. When she returned home, the plaintiff saw his wife was highly intoxicated, and he became incensed because she had driven home with the children while in such a debilitated state. It should be noted that when the defendant was previously arrested for driving under the influence, as mentioned above, she had totalled the family car with the older children as passengers, and her blood alcohol content was a .32 percent. The latter event caused the plaintiff to leave the family residence with the children and go to his parent's home.
Shortly thereafter, the plaintiff suspected that the defendant was having an affair with an individual who had supplied cocaine to CT Page 12524 the parties in the past. On July 16, 1992, the plaintiff went to that individual's residence, kicked in the door, and observed the defendant, her companion, and drug paraphernalia therein. The defendant remained away from the family home for a number of days after this incident. When she did return she was drunk. As a result of these actions, the plaintiff filed this dissolution action.
While the dissolution action was pending, the defendant would live at the family residence for a while but then leave for days and sometimes weeks on end. Initially, the plaintiff permitted the defendant to schedule visits with the children whenever she wished. After four months of missed or tardy visitation, the plaintiff filed a motion on November 27, 1992, to suspend the defendant's visitation with the children. The defendant's failure to show up when the children expected to visit with her and the deep disappointment resulting therefrom was creating emotional problems for the children. On December 14, 1992, the plaintiff and defendant agreed that the motion to suspend visitation be granted to the extent that if the defendant procured an evaluation from a substance abuse treatment expert that she had no alcohol problem visitation would resume. The defendant was given thirty days to obtain the evaluation.
The defendant has never produced such an evaluation nor has she sought treatment. She has seen the older two children only two or three times in the last two years and the youngest child once. The youngest child, now four years old, does not know his mother's name and until recently referred to a neighbor as his "mommy." The middle child, now eight years old, has remarked on more than one occasion to others that she has no mother. The oldest child, now eleven years old, harbors deep resentment toward the defendant. Despite the long hiatus the older children still wish to have contact with the defendant.
The defendant voluntarily relinquished her employment at Travelers in November 1992. The plaintiff had offered to pay for treatment for the defendant's substance abuse and emotional problems, but the defendant declined to seek such treatment. The Travelers had available to the defendant an employee assistance program to deal with these problems, but the defendant refused to avail herself of this program. Soon after the dissolution action was filed, the plaintiff and the two older children began therapy sessions to help the family members cope with the emotional upheaval they were experiencing. The defendant was invited and CT Page 12525 urged to attend these sessions, but she refused. While the action was pending, the matter was referred to a family relations officer for a custody and visitation study. No such evaluation was able to be prepared because the defendant refused to participate.
The defendant has been unemployed since leaving her job two years ago. She claims she sent out a few resumes, but she has had no job interviews. She was offered employment as a waitress, but she refuses to work at that sort of job because it is beneath her skill level and pays far less than her former job. She has never paid child support, nor has she regularly provided gifts or greeting cards for the children on birthdays or holidays. She presently lives rent-free in a house owned by her former paramour and cocaine supplier. He is presently on parole after serving a prison term for a narcotics offense. The defendant's household bills are paid by her mother.
Forced by circumstances to become the primary caretaker of the children, the plaintiff had undergone dramatic changes in his lifestyle. He has secured new employment as the general manager of an electronics business. His new job allows him more free time, which he devotes to the children, and has enabled him to abate the financial indebtedness which previously existed. His neighbors and sister attest to his diligence in caring for the children and efforts to hold the new family structure together.
The family residence, located at 17 Spring Street, Manchester, is solely listed in the defendant's name. The reason for title being in the defendant was that the plaintiff at one point was starting a new business and wanted to protect this asset from the reach of business creditors. The property was purchased and improved using profits from the sale of the plaintiff's former residence amounting to approximately $80,000. The defendant also paid $15,000 of her own money toward the purchase of the residence and contributed to the mortgage payments while she was still working.
Taking into consideration the factors and principles set forth in General Statute §§ 46b-81 and 46b-66a, the court orders the defendant to convey, by quitclaim deed, her interest in the property known as 17 Spring Street, Manchester, to the plaintiff within thirty days of this decision.
Considering the factors and principles set forth in General Statutes § 46b-56, and guided by the best interests of the CT Page 12526 children, the court awards sole custody of the three children to the plaintiff. The plaintiff can and has established a stable, nurturing, and predictable environment for the children. The defendant's life, in contrast, is marked by instability, uncertainty, untreated substance abuse problems, and emotional and financial dependence.
Counsel for the plaintiff and the children have both urged the court to grant visitation to the defendant but only if such visitation is professionally supervised and is a accompanied by family therapy to reintroduce the children to their prodigal mother. The defendant resists all suggestions of supervised visitation or therapy.
Her feeling is that a long talk with their mother will resolve any problems the children may have. She attributes her emotion and employment woes to the absence of visitation with her children. The court feels that the defendant fails to recognize or admit that the lack of visitation is the product of her problems and not their cause. The court had the opportunity to observe the demeanor and listen to the testimony of the defendant. These observations, along with the other evidence in the case, lead the court to conclude that the defendant has emotional and dependency problems which remain unaddressed. The defendant has resisted every effort to obtain assistance for these problems. Her excuses for rejecting professional help were paltry and of a contradictory and quibbling nature. As an example, she states that she would do anything to be reunited with her children, yet has refused for two years to be evaluated for substance abuse, which evaluation was the only hurdle to visitation. Her excuse for failing to secure the report is that submission to evaluation is "voluntary."
The defendant's past visitation delinquencies and alcohol abuse have caused emotion repercussions on the children. Until the defendant can satisfy the court that she is genuinely prepared to address the issues of substance abuse and emotional distress unsupervised visitation is out of the question. The court grants visitation to the defendant on the following basis:
1. Visitation for three hours every other weekend.
 2. Such visitation to be supervised by a profession, supervisor approved by the family relations office.
3. The cost of such supervision to be paid by the defendant. CT Page 12527
 4. Visitation to commence after the defendant submits to and receives an evaluation and recommendation from a substance abuse counsellor approved by the family relations officer.
 5. Visitation may be suspended if the defendant fails to embark on and adhere to any course of counselling or treatment recommended by the family relations office as a result of the evaluation.
The plaintiff is ordered to obtain such medical and dental insurance coverage for the benefit of the minor children as is available through his employment. The cost of uninsured, unreimbursed medical and dental expenses of the minor children shall be shared equally by the parties.
No child support payable by the defendant is ordered. The court recognizes that the defendant is capable of generating an income and voluntarily relinquished a job paying $28,000 per year. The court also recognizes that the plaintiff has supported the children alone for two years and will continue to do so until the defendant becomes reemployed. The court has awarded the family residence to the plaintiff and feels that this award balances the absence of child support by the defendant against the financial contribution she made to the residence. The court finds that the fair market value of the residence is around $175,000, and the amount of the equity remaining after consideration of outstanding mortgage and lien balances to be around $50,000. The court notes that the plaintiff contributed substantially to the purchase and improvement of the property out of proceeds he received from the sale of a former residence, including $35,000 of the downpayment.
The defendant is ordered to report reemployment upon obtaining it to the plaintiff.
Sferrazza, J.